# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

LETICIA CERVANTES DE HERNANDEZ,

          Petitioner,

    vs.                             **Case No. 05-C-0347**

MICHAEL CHERTOFF, et al.,

          Respondent.

# DECISION AND ORDER

Leticia Cervantes de Hernandez ("Cervantes de Hernandez") has been in this country for twenty years, and perhaps even longer. On March 22, 2005, she was detained by special agents of Immigrations and Customs Enforcement and now awaits removal. Cervantes de Hernandez filed a petition for a writ of habeas corpus, temporary restraining order, injunction, and declaratory judgment. Her case presents questions that must be answered by the complex, evolving, and sometimes ambiguous, area of immigration law.

## I. BACKGROUND

Cervantes de Hernandez is a female native and citizen of Mexico. Her husband and two sons are United States citizens. She has been in the United States since at least April 20, 1985, when she entered the country without inspection.[1] In November 1993, she was granted permission to depart the United States voluntarily within one year, but she did not do so.

---

[1] Cervantes de Hernandez has provided evidence that she entered the United States as early as December 17, 1979, on a B-2 visa. Whatever her history in this country before April 1985, she does not suggest it is relevant to this proceeding.

In the meantime, Cervantes de Hernandez was caught exchanging fake social security cards and fake resident alien cards for money. She pleaded guilty (in this district) to two crimes: transferring false United States identification documents in violation of 18 U.S.C. § 1028(a)(2) and knowingly possessing unlawful United States documents in violation of 18 U.S.C. § 1028(a)(6). She was sentenced in January 1995 by then-Chief Judge Terence T. Evans to two years probation.

Nearly two years later, in October 1996, the Immigration and Naturalization Service ("INS")[2] began deportation proceedings against Cervantes de Hernandez. The INS alleged that Cervantes de Hernandez had entered the United States without inspection in violation of Section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"). Not long after learning of the deportation proceedings, Cervantes de Hernandez filed an Application to Register Permanent Residence or Adjust Status ("Form I-485") with the INS. On that form, Cervantes de Hernandez answered "NO" when asked whether she had ever "been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations." (*See* Muwonge Decl. in Supp. of Habeas Corpus Pet. ("Muwonge Decl.") Ex. 7.) Cervantes de Hernandez says that misrepresentation (she had, in fact, been convicted) was her lawyer's fault.

Cervantes de Hernandez maintains that her lawyer sent her two copies of the form. He asked her to sign the original, but to leave the questions blank—she was to fill in her answers to the questions on a photocopy of the form. Cervantes de Hernandez claims she signed the

---

[2]Congress abolished the INS and distributed its functions among the bureaus of the newly established Department of Homeland Security in 2003. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The Bureau of Immigrations and Customs Enforcement, within the Department of Homeland Security, now handles immigration enforcement. For ease of reference, however, this opinion will refer to the INS.

Case 2:05-cv-00347-RTR   Filed 05/06/05   Page 2 of 22   Document 18

original, certifying under penalty of perjury that the information on the application was true, and her lawyer later typed the answers from the copy onto the original and submitted the form.

For thirteen months nothing happened. Then, in December 1997, the INS notified Cervantes de Hernandez of two additional charges of deportability. First, the INS claimed that Cervantes de Hernandez could be deported because of her conviction in the Eastern District of Wisconsin. *See* 8 U.S.C. § 1227(a)(2)(A)(ii) (any alien who, at any time after entry, is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, is deportable). Second, the INS claimed that Cervantes de Hernandez was excludable because she had willfully misrepresented a material fact on her Form I-485 in an effort to procure a visa or other documentation or benefit provided by the INA. *See* 8 U.S.C. § 1182(a)(6)(C)(i) (any alien who by fraud or willfully misrepresenting a material fact, seeks to procure a visa, other documentation, or entry into the United States or other benefit provided by the INA is excludable). In response, Cervantes de Hernandez filed an Application for Waiver of Grounds of Excludability.

So, when the case went before an immigration judge ("IJ) in April 1998, three matters required resolution: (1) deportation proceedings against Cervantes de Hernandez; (2) Cervantes de Hernandez's Form I-485 (Application for Adjustment of Status); and (3) Cervantes de Hernandez's Application for Waiver of Grounds of Excludability. After a lengthy series of hearings, the IJ issued a decision on September 28, 2001. In it, the IJ found by clear, convincing, and unequivocal evidence that Cervantes de Hernandez was deportable because she had entered the United States without inspection. He also found that she was inadmissible because she had

willfully misrepresented a material fact on her Form I-485. He did not find, however, that she was deportable because of her two convictions in the Eastern District of Wisconsin because one of the two offenses was a possessory offense that he did not consider a "*separate* crime involving moral turpitude." (Muwonge Decl. Ex. 13 (emphasis added).)

Having concluded that Cervantes de Hernandez was inadmissible, the IJ turned to her request for a waiver of inadmissibility (a waiver she needed in order to have her status adjusted). Waiver of inadmissibility is a form of relief committed to the IJ's discretion. *See* 8 U.S.C. § 1182(i). The IJ determined that Cervantes de Hernandez's family ties to the United States—her husband and two sons are United States Citizens—would ordinarily be sufficient to earn her a waiver of inadmissibility. But the IJ also noted that he was entitled to balance favorable and unfavorable factors. Accordingly, the IJ considered testimony that Cervantes de Hernandez gave at her deportation hearing regarding her convictions. He found that Cervantes de Hernandez's "testimony was neither altogether truthful nor candid." (Muwonge Decl. Ex. 13.) As a result, the IJ denied her application for a waiver of inadmissibility (and her application for adjustment of status), noting that it was "unfortunate given that her . . . family ties [and] attendant hardship . . . would ordinarily outweigh the egregiousness of the crime for which she was convicted."

Cervantes de Hernandez appealed to the Board of Immigration Appeals ("BIA"), but to no avail. In March 2003, the BIA affirmed the IJ's decision without opinion. The BIA ordered Hernandez to voluntarily depart within thirty days or be deported. Rather than depart, Cervantes de Hernandez filed a motion to reopen her case with the BIA. In that motion,

Cervantes de Hernandez alleged that she had been ineffectively assisted by her original lawyer because he had answered the criminal history question on her Form I-485 incorrectly. She submitted "new evidence" to the BIA to substantiate her claim—a letter from her lawyer instructing her to sign the original form, fill out a copy, and mail both back to him; he would type the answers on the original and submit it. Unfortunately, Cervantes de Hernandez submitted her motion to reopen one day late, and the BIA denied it as untimely. Moreover, while the Board had discretion to reopen the case despite the untimeliness of the motion, *see* 8 C.F.R. § 1003.2(a), it chose not to. It noted:

> There is no basis whatsoever for abrogating the motions deadline here. The respondent has been represented by current counsel since 1998, when he appeared on her behalf at a continued deportation hearing. Current counsel also represented [Cervantes de Hernandez] on appeal to this Board. Her claims against former counsel could have been raised long ago . . . .

(Muwonge Decl. Ex. 18 at 2.) Though ordered to depart voluntarily several times, Cervantes de Hernandez has failed to do so. She was detained on March 22, 2005, and is scheduled to be deported.

With few (if any) options available to her, Cervantes de Hernandez filed a petition for a writ of habeas corpus, temporary restraining order, injunction, and declaratory judgment in this Court. Without the benefit of the government's response, the Court granted Cervantes de Hernandez's request for a temporary restraining order preventing the government from deporting her. *See* Decision and Order March 31, 2005. The matter was promptly set for a hearing to determine whether a stay of removal should issue and to identify more carefully the contours of Cervantes de Hernandez's petition. After hearing both sides of the story, the Court took these

matters under advisement, giving the parties ten days to brief their issues and promising a decision within thirty days.

## II. DISCUSSION

Cervantes de Hernandez bases her petition for a writ of habeas corpus on two alleged errors of law. First, she claims that the IJ erred as a matter of law when he found that she willfully misrepresented a material fact on her Form I-485 (an offense that made her inadmissible). She argues that the IJ was required to make that finding by clear, convincing, and unequivocal evidence—a standard that she maintains must admit of no doubt. *See Addington v. Texas*, 441 U.S. 418, 432 (1979) ("The term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." (footnote omitted)). She insists that there was doubt in the record because she testified that the misrepresentation was not her fault, but her lawyer's. Second, Cervantes de Hernandez claims that once he found her inadmissible, the IJ erred when he denied her a waiver of inadmissibility. Specifically, she alleges that he erroneously considered her testimony about her convictions in exercising his discretion. None of Cervantes de Hernandez's substantive claims may be reached, however, until the Court determines whether it has jurisdiction.

**A. 8 U.S.C. § 1252(g)**

Congress overhauled immigration law nine years ago with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Pub. L. 104-208, 110 Stat. 3009. That overhaul significantly altered the jurisdiction of the federal courts to hear challenges to the INS's final decisions in immigration cases, both on direct appeal and in habeas

-6-

proceedings. But not all of those alterations affect Cervantes de Hernandez because she was placed in deportation proceedings before the law took effect on April 1, 1997. *See* IIRIRA § 309(c)(1).[3] Instead, Congress devised "transitional rules" for judicial review to apply to aliens like Cervantes de Hernandez who were placed in deportation proceedings before April 1, 1997, and are challenging final orders of deportation entered after October 31, 1996.[4] *See* IIRIRA § 309(c); *Beslic v. I.N.S.*, 265 F.3d 568, 570-71 (7th Cir. 2001).

The transitional rules exempt Cervantes de Hernandez from the operation of most of 8 U.S.C. § 1252 in its current form, but not from § 1252(g),[5] which limits the type of matters this Court may hear in immigration cases. Section 1252(g) reads:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate

---

[3]IIRIRA § 309(c)(1) states:

Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of [April 1, 1997] . . . the amendments made by this subtitle shall not apply, and . . . the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

[4]A deportation order becomes final

upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken; or, if such an order is issued by the Board or approved by the Board upon certification, it shall be final as of the date of the Board's decision. 8 C.F.R. § 1241.31.

[5]There are exceptions to the general rule that the IIRIRA is not retroactively applicable. *See* IIRIRA § 309(a). One of those exceptions states:

Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under section 309, except that subsection (g) of section 242 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1252(g)] . . . shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.

IIRIRA § 306(c) as amended by Pub. L. No. 104-302, 110 Stat. 3657 (1996); *see also Lalani v. Perryman*, 105 F.3d 334, 336 (7th Cir. 1997); Hiroshi Motomura, *Judicial Review in Immigration Cases After* AADC: *Lessons From Civil Procedure*, 14 Geo. Immigr. L.J. 385, 399-400 (1999).

cases, or execute removal orders against any alien under this chapter.[6]

Despite the facially broad language of 1252(g), the Supreme Court has held that it should be construed narrowly. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). Section 1252(g), the Court has said, "applies only to three discrete actions that the Attorney General may take: [his] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* Re-emphasizing the holding of *AADC*—that § 1252(g) precludes jurisdiction over only the three discrete actions or decisions listed in § 1252(g)—the Seventh Circuit later added that a court must look carefully at an alien's well-pleaded complaint to determine whether it implicates one of the three discrete actions named in § 1252(g). *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000). Obscure connections between the complaint and one of the three action listed in § 1252(g) will not do. A court must consider specifically what action is being challenged. *See id.*

Here, Cervantes de Hernandez is challenging the IJ's decision that she is deportable, so § 1252(g) does not divest this Court of jurisdiction over her claim. Cervantes de Hernandez is not complaining about the decision to commence proceedings, or the decision to adjudicate the case, and the government does not argue otherwise. It may appear, from the timing of her petition (which coincides with the execution of her removal order), that Cervantes de Hernandez is challenging the decision to execute the removal order. In fact, she is not

---

[6]Cervantes de Hernandez inexplicably "urges the Court to not focus so intently on § 1252(g)." (*See* Cervantes de Hernandez's Br. on Issue of Jurisdiction at 20.) She believes that other rules governing the validity of a deportation order are more important and, apparently, because of their importance should be heard by this Court even if § 1252(g) deprives it of jurisdiction. That position is, of course, indefensible. Jurisdiction is a first principle; without it the Court can do nothing.

challenging the decision to execute the removal order. Instead, Cervantes de Hernandez contests the IJ's determination that she is removable. Her claim "arises from" the alleged legal errors that the IJ committed while reviewing her case. If the government had never decided to execute the removal order, Cervantes de Hernandez would still have her claim. She is not contending that the government should not be removing her *now* (which would be a challenge to the decision to execute a removal order), she is arguing that the underlying order, upon which the government relies as its basis for removal, is invalid. Put differently, Cervantes de Hernandez is not challenging the execution of the removal order, she is challenging its existence.

This case presents a unique situation, however, because of the relief Cervantes de Hernandez seeks. In addition to a declaration that the order of removal entered against her is invalid, Cervantes de Hernandez asks the Court for a stay of removal. Stays of removal in cases like this one have been foreclosed by the Seventh Circuit's decision in *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786 (7th Cir. 2002). In *Sharif*, twin sisters petitioned the district court for a writ of habeas corpus. *Id.* at 787. They brought no substantive challenge to their immigration proceedings; their substantive claims were still being adjudicated at the agency level. *Id.* Instead, they sought only one thing: a stay of removal until their substantive claims could be resolved. *Id.* The district court dismissed their request for lack of jurisdiction and the Seventh Circuit affirmed. *Id.* "A request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order" and, therefore, may not be entertained by any court. *Id.*; *see* 1252(g).

From *Sharif*, the government extrapolates that this Court is *entirely* without jurisdiction. But unlike the *Sharif* petitioners, who requested only a stay of removal, Cervantes de Hernandez requests a stay of removal and a declaration that the removal order is invalid. *See also Morales-Ramirez v. Reno*, 209 F.3d 977, 980 (7th Cir. 2000) (alien did not challenge the validity of his order of detention, so the court expressly reserved ruling on issue of whether habeas corpus relief was available); *Singh v. Reno*, 182 F.3d 504, 509 (7th Cir. 1999) ("since Singh concedes that he is detained pursuant to valid orders issued by the appropriate authorities, we need not concern ourselves here with the potential reach . . . of the constitutional writ of habeas corpus")

*Fornalik v. Perryman* more closely resembles this case. 223 F.3d 523 (7th Cir. 2000). In *Fornalik*, a Polish immigrant challenged the Attorney General's denial of his application for adjustment of status. *Id.* at 532. The government had already threatened removal by the time Fornalik filed his petition for habeas corpus in the district court. *Id.* at 530-31. Though Fornalik requested a stay of removal, he also was challenging the validity of Attorney General's decision to deny his adjustment of status application. The Seventh Circuit explained: "[A]lthough [Fornalik] obviously wants this court to stop the execution of a removal order, that fact comes into the case only incidentally. His claim is not that the Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes his removal improper." *Id.* at 532. Like Fornalik, Cervantes de Hernandez challenges an error unrelated to the Attorney General's decision to execute the removal order.

It is difficult to reconcile *Fornalik* with *Sharif*. *Fornalik*, which preceded *Sharif* by two years, says that request for stays of removal may be entertained if they are incident to challenges not forbidden by § 1252(g). 223 F.3d at 532. *Sharif* says requests for stays of removal arise from the Attorney General's decision to execute removal orders and may not be entertained. 280 F.3d at 787. Perhaps the distinction between *Fornalik* and *Sharif* lies in the difference between claims and relief. *See Mustata v. United States Dep't of Justice*, 179 F.3d 1017, 1023 (6th Cir. 1999) ("The fact that the Mustatas in their petition seek a stay of deportation does not make their claim one against the decision to execute a removal order. . . . Respondent's argument to the contrary confuses the substance of the Mustatas' claim with the remedy requested."). Indeed, the *Fornalik* court noted that a request for a stay of removal was only incidental to Fornalik's claim. In contrast, the *Sharif* petitioners sought only a stay of removal while their substantive claims were adjudicated at the agency level. *Sharif*, 280 F.3d at 787. But *Sharif*'s broad language makes the distinction between claims and relief a difficult one to draw: "[Section] 1252(g) does not differentiate among kinds of relief. . . . A request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order." *Id.*; *see also Chowdhury v. Ashcroft*, 241 F.3d 848, 850-51 (7th Cir. 2002) (holding that, despite claiming ineffective assistance of counsel, petitioner wanted to test validity of deportation order before Board of Immigration Appeals and not district court; thus, "at the end of the day Chowdhury was asking the district court [only] to stay the execution of his deportation order"). The practical effect of *Fornalik* and *Sharif*, it seems, is that the Court may entertain Cervantes de Hernandez's claim challenging the legal validity of her deportation order, but may not stay her removal while

it considers that claim.  This is an odd predicament indeed, though it appears to be the law of this circuit.  *But see, e.g.*, *Wallace v. Reno*, 194 F.3d 279, 285 (1st Cir. 1999) ("where the district court has the authority to grant habeas we are unwilling to read [§ 1252(g)] as depriving the court of authority to issue traditional ancillary relief [like stays of removal] needed to protect its authority to issue the writ").  So the Court may not grant Cervantes de Hernandez a stay of removal (or an injunction for that matter) because *Sharif* says § 1252(g) prevents the Court from doing so.[7]  But § 1252(g) does not prevent the Court from entertaining Cervantes de Hernandez's substantive claims attacking the validity of the deportation order.

**B. Jurisdictional Problems Specific to Cervantes de Hernandez's Claims**

Although Cervantes de Hernandez's two substantive claims survived the restrictions of § 1252(g), they do not fare so well against the restrictions of habeas corpus jurisdiction under 28 U.S.C. § 2241.  The Seventh Circuit has not addressed the scope of habeas proceedings under § 2241,[8] but the Third Circuit recently explained that § 2241 review is limited to claims that statutory or constitutional rights have been violated, *Bakhtriger v. Elwood*, 360 F.3d 414, 424 (3d Cir. 2004), and several other circuits agree.  The *Bakhtriger* opinion, delivered by Judge Michael Chertoff (who now, ironically, is a named defendant in this case by virtue of

---

[7]Whether it was error for the Court to grant a stay of removal in the first place is of no moment. The stay has run its course and the error—if there was one—cannot be undone. Whether *Sharif* affects the holding of *Fornalik* the way this Court believes it does, and stays of removal cannot be granted while proper habeas corpus petitions are entertained, is now more properly addressed to the Seventh Circuit on appeal.

[8]In fact, the Seventh Circuit looked at the issue in *Yang v. I.N.S.*, 109 F.3d 1185, 1195 (7th Cir. 1997), but that decision was later overruled by the Supreme Court in *AADC*. The *Yang* court distinguished between the constitutional writ and § 2241. That court noted that the constitutional writ does not offer review of discretionary decisions, but that § 2241 offers broader opportunities for collateral attack than the constitutional writ. *Yang* declined to define the scope of § 2241, however, because it held that habeas review under § 2241 was abolished by the broad language of 8 U.S.C. § 1252(g). *Id.* The Supreme Court later disagreed, holding that § 1252(g) is to be read narrowly. *AADC*, 525 U.S. at 482. Thus, *Yang* sheds little light on the current discussion in part because it does not define the scope of § 2241, and in part because what it does say about § 2241 was overruled.

his appointment as Secretary of the Department of Homeland Security), recalled that until the 1952 amendments to immigration law, aliens were limited to challenging only the legality of their restraint, not discretionary determinations, factual findings, or sufficiency of the evidence. *Id.* at 421-22. Indeed, Supreme Court cases support that understanding.

> [T]he final determination of . . . facts may be entrusted by Congress to executive officers; and in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to reexamine or controvert the sufficiency of the evidence on which he acted.

*Ekiu v. United States*, 142 U.S. 651, 660 (1892), *quoted in Bakhtriger*, 360 F.3d at 421; *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). After the 1952 immigration law amendments, courts began to understand § 2241 review to contemplate a broader standard of review—examining agency opinions for arbitrariness, capriciousness, or abuse of discretion. *Bakhtriger*, 360 F.3d at 422. That broader standard of review was cemented by the 1961 addition of special habeas provisions to the immigration statute. *Id.* at 422-23; *see* INA § 106(a)(10) (formerly codified at 8 U.S.C. § 1105a(a)(10)). But the 1996 passage of the IIRIRA repealed the immigration statute's habeas provision and left aliens with only § 2241. *See* Pub L. No. 104-208, § 306(b), 110 Stat. 3009-612. Consequently, the Third Circuit has held the scope of review is, once again, narrow—limited to statutory and constitutional claims. *Id.* at 424. Five other circuits have likewise narrowly construed the scope of review under § 2241. *Bravo v. Ashcroft*, 341 F.3d 590, 592 (5th Cir. 2003); *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824,

827 (9th Cir. 2002); *Carranza v. I.N.S.*, 277 F.3d 65, 71 (1st Cir. 2002); *Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001); *Bowrin v. I.N.S.*, 194 F.3d 483, 489-90 (4th Cir. 1999).

   *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), upon which Cervantes de Hernandez relies heavily in her briefs, also supports the understanding that the scope of review under § 2241 is limited to statutory and constitutional error.[9] The *St. Cyr* court reviewed language in the IIRIRA that precludes "judicial review" of "'any final order of removal against an alien who is removable by reason of having committed' certain enumerated criminal offenses." *St. Cyr*, 533 U.S. at 311 (quoting 8 U.S.C. § 1252(a)(2)(C)). Noting that "[i]n the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings," *id.*, the Court held that although § 1252(a)(2)(C) precluded judicial review it did not preclude habeas review. *Id.* at 312. To clarify the distinction between judicial review and habeas corpus, the Court observed that the scope of habeas is significantly more limited than the broad judicial review that examines agency decisions for arbitrariness, capriciousness, or abuse of discretion. *Id.* After all, for Congress to preclude broad judicial review of certain immigration decisions, only to allow the same review of those provisions under § 2241 would be senseless.

   Thus, the Court is satisfied that § 2241 jurisdiction is limited to claims of statutory or constitutional error, and that Cervantes de Hernandez presents neither.

---

  [9]It is worth noting that five of the six circuits that have held that § 2241 review is limited to statutory and constitutional errors did so after *St. Cyr*.

## 1. The IJ's Finding That Cervantes de Hernandez Willfully Misrepresented a Material Fact

Cervantes de Hernandez's first argument is that the IJ erred by finding that she willfully misrepresented a material fact on her Form I-485. The government had the burden to show this fact by clear, convincing, and unequivocal evidence. Cervantes de Hernandez maintains that this standard requires the record to be free of all doubt. She contends that doubt existed because she testified that her attorney made the misrepresentation, not her.

The government characterizes this issue as one of ineffective assistance of counsel. Accordingly, it argues that Cervantes de Hernandez has failed to exhaust her administrative remedies because she did not follow the BIA's procedure for bringing ineffective assistance of counsel claims. Certainly, this was one option available to Cervantes de Hernandez. But it is not one she chose (at least not until she moved the BIA to reopen her case) and it is not one she argues before this Court. The Court finds that Cervantes de Hernandez has raised a problem with the sufficiency of the evidence.

Unfortunately for Cervantes de Hernandez, questions of sufficiency of the evidence are precluded from § 2241 review. *See Bakhtriger*, 360 F.3d at 420 ("We believe that, under section 2241, habeas proceedings do not embrace review of the exercise of discretion or the sufficiency of the evidence."); *Bravo*, 341 F.3d at 593 ("The Bravos argue that the IJ failed to account for other factors that would support a finding of extreme hardship; they do not raise statutory or constitutional arguments."); *Sol*, 274 F.3d at 651 ("Sol, however does not raise a statutory or constitutional claim. He simply contends that the decisions of the IJ and the BIA lacked adequate support in the record."). Cervantes de Hernandez frames her argument in

general constitutional terms, alleging that she was deprived of due process. But due process ensures process, not particular results. Cervantes de Hernandez received due process of law when she was allowed to present her evidence to the IJ, appeal the IJ's decision to the BIA, and then to appeal legal errors to the Seventh Circuit.[10] How the IJ weighs the evidence once it is presented to him is not a due process question. Cervantes de Hernandez is asking the Court to reweigh the evidence and direct the IJ to reach a different conclusion. That is not the stuff of § 2241 review.

Even if this Court could review the sufficiency of the evidence, Cervantes de Hernandez's claim would fail. 8 U.S.C. § 1220a(c)(1)(A) requires an IJ's determination to be based on evidence produced at the hearing. Cervantes de Hernandez does not help her cause by invoking the letter that she found well after the IJ's decision was rendered. A snapshot of the evidence produced at the hearing reveals that the IJ's determination was rooted in that evidence. The IJ was presented with: Form I-485 misrepresenting Cervantes de Hernandez's criminal history; her signature on that form; evidence that Cervantes de Hernandez had pleaded guilty to two criminal violations in United States District Court; and a story, with no corroborating evidence, from Cervantes de Hernandez that her attorney made the error. The IJ's finding that

---

[10]Cervantes de Hernandez insists she was not able to appeal any of the IJ's decisions to the Seventh Circuit because they were matters within the IJ's discretion. The Court addresses that argument, *infra*, at section II.B.2.

she willfully misrepresented a material fact is fully supported and meets the standard of clear, convincing, and unequivocal evidence.[11]

## 2. IJ's Refusal to Waive Cervantes de Hernandez's Inadmissibility

After the IJ found that Cervantes de Hernandez was inadmissible because she had committed a fraud or willfully misrepresented a material fact on her I-485, he had the discretion to waive her inadmissibility. He exercised that discretion by refusing to waive her inadmissibility.

Cervantes de Hernandez challenges that refusal, insisting that she is not seeking review of the Attorney General's discretionary decision. Instead, she says, the Court should review whether it was legal error for the IJ to weigh her testimony about her criminal convictions. A refusal by the IJ to *consider* her claim for discretionary relief would be reviewable by this Court (because she had a statutory right to ask the IJ to consider such relief), but an unfavorable exercise of that discretionary power, after consideration, is not. The Supreme Court's opinion in *Accardi* draws the distinction between the underlying statutory right and favorable exercises of discretion. "[W]e are not here reviewing and reversing the *manner* in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief. Rather, we object to the Board's alleged *failure to exercise* its own discretion." *Id.* at 268. In other words, Cervantes de Hernandez has

---

[11]Cervantes de Hernandez argues that once she testified that her attorney made a mistake filling out her Form I-485, the government was obligated to rebut that evidence and failed to do so. Thus, she says, doubt existed in the record. If Cervantes de Hernandez's uncorroborated story is good enough, as a rule, to cast doubt into the record, the evidentiary standard is worthless. The government met its burden by showing the form with her signature and a misrepresentation. Unless the IJ finds her testimony remarkably credible (which he could have), she cannot cast doubt simply by saying "This is not what it looks like."

a right to the process, but no right to a particular result.  *See, e.g.*, *Accardi*, 347 U.S. at 267-68; *Carranza*, 277 F.3d at 71 (1st Cir. 2002).  She received the process, but now asks this Court to review the results.  Section 2241, however, does not confer on this Court the jurisdiction to review discretionary decisions.[12]

Besides, there is a fundamental flaw in Cervantes de Hernandez's argument.  On the one hand, she argues that she could not appeal to the Seventh Circuit because the statutes and case law clearly state that she may not seek appellate review of discretionary decisions.  *See* IIRIRA § 309(c)(4)(E) ("In the case described in paragraph (1) in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this act . . . there shall be no appeal of any discretionary decision under [8 U.S.C. § 1182(i)]").  On the other hand, she seeks review in this Court on the ground that she is not asking for review of discretionary decisions, but rather the legal conclusions underlying the Attorney General's exercise of discretion.  She cannot have it both ways.

If she is, in fact, seeking review of legal errors that precede any exercise of the Attorney General's discretion, she should have sought that review in the court of appeals.  *See,*

_____

[12]The government argues that § 1182(i)(2) also precludes this Court from reviewing the IJ's decision.  Section 1181(i) provides:

(1) The Attorney General may, in the discretion of the Attorney General waive the application of clause (i) of subsection (a)(6)(C) of this section in the case of an immigrant who is the spouse, son, or daughter of a United States Citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien.

(2) No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1).

8 U.S.C. § 1181(i).  Given the distinction that *St. Cyr* draws between judicial review and habeas corpus, *see St. Cyr*, 533 U.S. at 311, and the longstanding rule that a clear statement of Congressional intent is necessary to divest the Court of habeas corpus review, *see id.* at 298; *see also Felker v. Turpin*, 518 U.S. 651, 660-62; *Bowrin*, 194 F.3d at 489, the Court does not believe that § 1182(i)(2) precludes habeas review of the IJ's denial of waiver under this subsection.

*e.g.*, *Kalaw v. I.N.S.*, 133 F.3d 1147, 1150 (9th Cir. 1997) (determining matters of application of law to fact, or legal error, is not review of discretionary matters and is not precluded by transitional rules). If she cannot appeal to the Seventh Circuit because she is seeking review of discretionary decisions, she is out of luck because she cannot seek review of those discretionary decisions here either.

Once again, even if Cervantes de Hernandez was entitled to seek review of the legality of the considerations underlying the Attorney General's decision, she would not prevail. The decision to grant a waiver of inadmissibility is within the discretion of the IJ. *See* 8 U.S.C. § 1182(i). Citing *In re Cervantes*, the IJ noted that he was entitled to take into account the willful misrepresentation that created the basis for inadmissibility. *See In re Cervantes*, 22 I. & N. Dec. 560, 568-69 (BIA 1999). Instead of considering Cervantes de Hernandez's conduct in misrepresenting a fact on her Form I-485, however, the IJ considered the testimony she gave at her deportation hearing regarding her criminal conviction. He concluded that she had been "neither altogether truthful nor candid." (Muwonge Decl. Ex. 13.)

Cervantes de Hernandez contends that this was legal error. She maintains that *In re Cervantes* allows the IJ to consider only the underlying fraud. (*See* Br. on Issue of Jurisdiction at 9 ("*Cervantes* . . . only permits consideration of a ground underlying the [§ 1182(i)] waiver application.").) Cervantes de Hernandez is wrong.

*In re Cervantes*, upon which the IJ relied, takes its cue from *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26 (1997). To reach the holding of *Yueh-Shaio Yang*—that the INS could use the underlying fraud as a basis to deny discretionary waiver of admissibility—the Supreme Court

spoke in unmistakably broad terms. The Court noted that an IJ's power under a similar waiver of admissibility provision is unfettered: "We have described the Attorney General's suspension of deportation under a related and similarly phrased provision of the INA as an act of grace which is accorded pursuant to her unfettered discretion . . . and have quoted approvingly Judge Learned Hand's likening of that provision to a judge's power to suspend the execution of a sentence, or the President's power to pardon a convict." *Id.* at 30 (quotations and citations omitted). The basis for the holding in *Yueh-Shaio Yang* is clear—the Attorney General, through immigration judges, has the power to consider *any* factors he deems appropriate when making the discretionary determination of whether to grant waiver of inadmissibility. *See also Skutnik v. I.N.S.*, 128 F.3d 512, 514 (7th Cir. 1997). In short, *In re Cervantes* and *Yueh-Shaio Yang* do not hold that an IJ may consider *only* the fraud underlying a request for waiver of inadmissibility under § 1182(i)—they hold that the IJ may consider *even* the fraud underlying the request for waiver.

Cervantes de Hernandez's argument really amounts to this: if the IJ cannot deport her for something, he cannot consider it as a fact against her. That reasoning will not do. Cervantes de Hernandez maintains that the IJ did not find her deportable for her convictions so he should not have considered them at all, not even her testimony about them at the hearing. It seems absurd to suggest that the IJ could not consider (in his exercise of discretion) Cervantes de Hernandez's testimony on any matter at her hearing. Her argument presumes that the IJ should pretend her convictions did not exist. The IJ did not find her exempt from deportation on the convictions because they did not exist, but because one of the convictions was not a separate

crime involving moral turpitude. (Muwonge Decl. Ex. 13.); *see also* INA § 241(a)(2)(A)(ii). The crimes still occurred and the convictions are a fact. Just because Cervantes de Hernandez was not deportable for them does not preclude the IJ from considering them. She is not deportable for her testimony either, but certainly she would not argue that the IJ is precluded from considering it. That is precisely what the IJ did. And because he felt she was not credible, he declined to exercise his discretion to waive her inadmissibility.

Nevertheless, substantive questions about the IJ's refusal to waive inadmissibility are not before the Court because the Court has no jurisdiction to consider them. Given the broad principles of *Yueh-Shaio Yang*, it is clear that Cervantes de Hernandez is indeed challenging the exercise of the Attorney General's discretion and its outer limits. Her brief gives her away: "Discretion cannot be so unfettered that even absurdity cannot mark its outer limits." Though Cervantes de Hernandez tries to convince the Court that the Attorney General erred as a matter of law by considering certain factors when he denied her application for a waiver of inadmissibility, she is really arguing about his exercise of discretion, and this Court has no jurisdiction to consider such a claim.

Thus, Cervantes de Hernandez's second claim, like her first, cannot be heard.[13]

---

[13]The government argues that even if she prevailed on the issues she presented here, Cervantes de Hernandez would still be deported because she entered the country without inspection. (*See* Muwonge Decl. Ex. 13 (IJ finding by clear, convincing, and unequivocal evidence that Cervantes de Hernandez is deportable for entering the United States without inspection.) Cervantes de Hernandez counters that she could easily remedy that problem by applying to the Attorney General for adjustment of status. *See* 8 U.S.C. § 1255(i) ("an alien physically present in the United States . . . who . . . entered the United States without inspection . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence."). The Court need not address those arguments, however, since Cervantes de Hernandez did not prevail on the issues she presented.

### III. CONCLUSION

This Court does not have jurisdiction to entertain Cervantes de Hernandez's claims and requests for relief. Section 1252(g) prevents the Court from granting Cervantes de Hernandez a stay of removal while it considers the substance of her habeas corpus claim. *See Sharif*, 280 F.3d at 787. The substance of her claims—that there was insufficient evidence to find that she willfully misrepresented a fact on her Form I-485 and that the IJ erroneously exercised his discretion by considering testimony about her criminal convictions—is precluded by § 2241, which allows review of only constitutional or statutory errors. The errors she complains of are neither.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Cervantes de Hernandez's Petition for a Writ of Habeas Corpus, Temporary Restraining Order, Injunction, and Declaratory Judgment [Docket No. 1] is **DISMISSED** for lack of jurisdiction.

Dated at Milwaukee, Wisconsin this 6th day of May, 2005.

**BY THE COURT**

**s/ Rudolph T. Randa**

_____

**Hon. Rudolph T. Randa**
**Chief Judge**